UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| STEVEN ANDREW PALLAS, | Case No. 3:19-cv-01171-LB |
| Plaintiff, | |
| v. | **ORDER GRANTING DEFENDANTS' MOTION TO DISMISS** |
| PAUL ACCORNERO and CITY OF PETALUMA., | Re: ECF No. 14 |
| Defendants. | |

## INTRODUCTION

A Petaluma police officer arrested the plaintiff, Steven Pallas, for felony assault and misdemeanor battery after Mr. Pallas headbutted Christopher Gibson, allegedly to prevent Mr. Gibson from attacking him.[1] Ultimately, the District Attorney dismissed the case for "insufficient evidence."[2] The plaintiff sued the officer and the City of Petaluma, alleging malicious prosecution and false arrest (essentially for lack of probable cause because he acted in self-defense) in

---

[1] Compl. – ECF No. 1 at 4–5 (¶¶ 17–21); Criminal Docket, Ex. A to Request for Judicial Notice ("RJN") – ECF No. 14-1 at 6. Citations refer to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of documents. The court takes judicial notice of the public-record criminal docket. *Lee v. City of Los Angeles,* 250 F.3d 668, 689 (9th Cir. 2001).

[2] Criminal Docket, Ex. A to RJN – ECF No. 14-1 at 9 (dismissing the case on the "People's motion").

ORDER – No. 3:19-cv-01171-LB

violation of 42 U.S.C. § 1983 and state law.³ The defendants moved to dismiss all claims under Federal Rule of Civil Procedure 12(b)(6) on the ground that the plaintiff's allegations in the complaint established probable cause.⁴ The court grants the defendants' motion and dismisses the complaint with leave to amend.

## STATEMENT

According to the complaint, Mr. Gibson threatened the plaintiff's wife and the plaintiff's neighbor several times "for reporting multiple times to the Petaluma Police Department that methamphetamine and heroin were being distributed from a barber shop" that was associated with Mr. Gibson and that was next to a lighting store owned by the plaintiff's wife.⁵ The complaint describes several incidents.

First, on March 24, 2017, at around 4:30 p.m., Mr. Gibson went into the lighting store and threatened the plaintiff's wife by saying that "she better stop commenting in the paper" and making a gesture with his hand, mimicking a gun, "as if to say she would be killed."⁶ He said that "he knows who the wife is."⁷ The wife did not know him but identified him later by looking on Facebook.⁸ Second, on April 20, 2017, the plaintiff's wife was pruning the roses in her store's yard (with a friend), and Mr. Gibson "threaten[ed] her again in the same manner as the previous incident."⁹ Third, on June 21, 2017, at about 6:22 p.m., Mr. Gibson "trespassed on the plaintiff's neighbor, Tom's, property, smoked an illegal substance, and threatened to kill Tom and his

---

³ Compl. – ECF No. 1 at 5–9 (¶¶ 24–49).
⁴ Mot. – ECF No. 14 at 13–17.
⁵ Compl. – ECF No. 1 at 2.
⁶ *Id.* at 3 (¶ 8).
⁷ *Id.*
⁸ *Id.*
⁹ *Id.* (¶ 9). On June 15, 2017, the plaintiff's wife filed a police report with a Petaluma police officer named Giomi, reporting that Mr. Gibson had threatened her twice and providing a picture of Mr. Gibson that she downloaded from Facebook. *Id.* (¶ 10). Officer Giomi "failed to act competently on this information." *Id.*

children."[10] Fourth, at about 8:45 p.m. that night, the plaintiff and his wife were walking home from dinner and saw Mr. Gibson and the owner of the barbershop staring at them from the doorway of the barbershop.[11]

On June 26, 2017, the plaintiff's wife filed for a restraining order against Mr. Gibson, but her request was denied.[12]

On November 2, 2017, Mr. Gibson walked into Ray's Deli and Tavern in Petaluma, with his dog (a "Boxer Breed") on a leash and stood in the doorway, talking with Eli, the proprietor.[13] The plaintiff "subsequently walked into the tavern and sat down to order a beer."[14] While he was "trying to enjoy his beer," Mr. Gibson came to the table and said "hey, you're the fucktard who owns the building and lighting store down the street."[15] The plaintiff stood up and asked Mr. Gibson "if he was the person who had been threatening his wife."[16] "At that very moment, Mr. Gibson began to raise his hand toward the plaintiff's direction."[17] The plaintiff "believed he was going to be immediately attacked by Gibson, struck Gibson with a headbutt, placed Gibson in a control hold[,] and asked the owner of the tavern to call the Petaluma police."[18]

Officer Accornero responded to the incident and was told by the tavern owners that Mr. "Gibson was the aggressor and provoked the plaintiff and that Gibson had been a trouble maker, acting violent in the recent past inside the tavern with the owner."[19] Officer Accornero arrested the plaintiff anyway and charged him with felony assault and misdemeanor battery.[20] The District

---

[10] *Id.* (¶ 11).
[11] *Id.* at 4 (¶ 12).
[12] *Id.* (¶ 13).
[13] *Id.* (¶¶ 14–15).
[14] *Id.* (¶ 16).
[15] *Id.* (¶ 17).
[16] *Id.* (¶ 18).
[17] *Id.* (¶ 19).
[18] *Id.*
[19] *Id.* at 5 (¶ 20).
[20] *Id.* (¶ 21).

ORDER – No. 3:19-cv-01171-LB      3

Attorney later dismissed the charges for lack of evidence "after the plaintiff was forced to vigorously fight against the charges in court for over several months."[21]

The plaintiff timely filed a government claim against the defendants pursuant to California Government Code § 910.[22] The City of Petaluma rejected his claim on June 26, 2018.[23]

The plaintiff's complaint has the following claims: (1) a 42 U.S.C. § 1983 claim against Officer Accornero for malicious prosecution and wrongful arrest for lack of probable cause because the "officer had knowledge that the plaintiff was acting in self-defense;" (2) state-law negligence and false-imprisonment claims against Officer Accornero based on the same conduct; (3) state-law negligence and false-imprisonment claims against the City of Petaluma based on its vicarious liability under California Government Code § 815.2; and (4) a claim under the Bane Act, California Civil Code § 52.1, based on the allegedly unlawful detention.[24] The defendants moved to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.[25] The court held a hearing on May 30, 2019. All parties have consented to magistrate-judge jurisdiction.[26]

**STANDARD OF REVIEW**

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief" to give the defendant "fair notice" of what the claims are and the grounds upon which they rest. Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A complaint does not need detailed factual allegations, but "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to

---

[21] *Id.* (¶ 22); Criminal Docket, Ex. A to RJN – ECF No. 14-1 at 4–9.
[22] *Id.* (¶ 23).
[23] *Id.*
[24] Compl. – ECF No. 1 at 5–9 (¶¶ 24–49).
[25] Mot. – ECF No. 14.
[26] Consent Forms – ECF Nos. 7, 13.

ORDER – No. 3:19-cv-01171-LB    4

raise a right to relief above the speculative level . . . ." *Twombly*, 550 U.S. at 555 (internal citations omitted).

To survive a motion to dismiss, a complaint must contain sufficient factual allegations, which when accepted as true, "'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. (quoting *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id*. (quoting *Twombly*, 550 U.S. at 557) (internal quotations omitted).

If a court dismisses a complaint, it must give leave to amend unless the "pleading could not possibly be cured by the allegation of other facts." *Cook, Perkiss and Liehe, Inc. v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990).

## ANALYSIS

### 1. Section 1983 Claim — Malicious Prosecution and Lack of Probable Cause

The plaintiff alleges a 42 U.S.C. § 1983 claim on the ground that Officer Accornero lacked probable cause to arrest him.[27] The defendants moved to dismiss on the ground that the plaintiff's allegations establish probable cause for battery.[28] The court grants the motion to dismiss.

**1.1 Governing Law**

42 U.S.C. § 1983 provides a cause of action for the deprivation of "rights, privileges, or immunities secured by the Constitution and laws [of the United States]" by any person acting "under color of any statute, ordinance, regulation, custom, or usage." *Gomez v. Toledo*, 446 U.S.

---

[27] Compl. – ECF No. 1 at 5–6 (¶¶ 24–34).

[28] Mot. – ECF No. 14 at 13–17.

635, 638 (1980). 42 U.S.C. § 1983 "'is not itself a source for substantive rights,'" but rather "'a method for vindicating federal rights elsewhere conferred.'" *Graham v. Connor*, 490 U.S. 386, 393–94 (1989) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)). To state a claim under 42 U.S.C. § 1983, a plaintiff must allege: (1) the conduct complained of was committed by a person acting under color of state law; and (2) the conduct violated a right secured by the Constitution or laws of the United States. *See West v. Atkins*, 487 U.S. 42, 48 (1988).

For a constitutional claim of false arrest or false imprisonment under 42 U.S.C. § 1983, a plaintiff must show that the defendants did not have probable cause to arrest him. *Cabrera v. City of Huntington Park*, 159 F.3d 374, 380 (9th Cir. 1998) (citing *George v. City of Long Beach*, 973 F.2d 706, 710 (9th Cir. 1992)); *accord Lacey v. Maricopa Cnty.*, 693 F.3d 896, 918 (9th Cir. 2012) ("A claim for unlawful arrest is cognizable under § 1983 as a violation of the Fourth Amendment, provided the arrest was without probable cause or other justification.") (quotation omitted).

For a constitutional claim of malicious prosecution under 42 U.S.C. § 1983, a plaintiff must show that the prosecution "(1) was commenced by or at the direction of the defendant and was pursued to a legal termination in [the] plaintiff's[] favor; (2) was brought without probable cause; . . . (3) was initiated with malice;" and (4) was brought "for the purpose of denying [the plaintiff] equal protection or another specific constitutional right." *Mills v. City of Covina*, 921 F.3d 1161, 1169 (9th Cir. 2019) (citations omitted).

The plaintiff claims that the arrest was false, and the prosecution was malicious, because Officer Accornero did not have probable cause to arrest him.[29] "Probable cause exists when there is a fair probability or substantial chance of criminal activity." *Lacey*, 693 F.3d at 918 (quotation omitted). "Probable cause exists when police have knowledge at the moment of arrest of facts and circumstances based on reasonably trustworthy information that would warrant a belief by a reasonably prudent person that the person arrested has committed a criminal offense." *Franklin v. Fox*, 312 F.3d 423, 438 (9th Cir. 2002) (citing *Beck v. Ohio,* 379 U.S. 89, 91 (1964); *United States*

---

[29] Compl. – ECF No. 1 at 5–6 (¶¶ 24–34).

*v. Buckner,* 179 F.3d 834, 837 (9th Cir. 1999)). "In general, we must ask whether 'a prudent person would believe [that the plaintiff] had committed a crime.'" *Lacey*, 693 F.3d at 918 (quoting *Dubner v. City and Cnty. of S. F.*, 266 F.3d 959, 966 (9th Cir. 2001)). "The evidence need support 'only the probability, and not a prima facie showing, of criminal activity,' *Illinois v. Gates,* 462 U.S. 213, 235 (1983), and such evidence need not be admissible, but only legally sufficient and reliable. *Franks v. Delaware,* 438 U.S. 154, 165 (1978)." *Franklin*, 312 F.3d at 438.

"It is well-settled that 'the determination of probable cause is based upon the totality of the circumstances known to the officers at the time'" of the arrest. *Lacey*, 693 F.3d at 918 (quotation omitted) (quoting *United States v. Bishop,* 264 F.3d 919, 924 (9th Cir. 2001)).

### 1.2 Application

The plaintiff does not plead a claim for false arrest or malicious prosecution because the police had probable cause to arrest him. By his own admission, the plaintiff headbutted Mr. Gibson based only on his belief — after Mr. Gibson "began to raise his hand toward the plaintiff's direction" — that Mr. Gibson was about to attack him.[30] These facts constitute probable cause for his arrest for felony assault (in violation of California Penal Code § 244.5(b)) and misdemeanor battery (in violation of California Penal Code § 242), which generally prohibit the unlawful use of force against another person.[31] California Penal Code §§ 240, 242, 244.5; *People v. Shockley*, 58 Cal. 4th 400, 404 (2013); *In re Branden O.*, 174 Cal. App. 4th 637, 642 (2009); *People v. Williams*, 26 Cal. 4th 779, 784, 790 (2001); *see Castro v. City of Union City*, No. 14-cv-00272-MEJ, 2016 WL 1569976 at *9 (N.D. Cal. April 19, 2016).

The plaintiff does not challenge the conclusion that these facts constitute probable cause but instead alleges a lack of probable cause because he acted in self-defense.[32] He alleges that the officer knew — because the tavern owners told him — that Mr. Gibson was the aggressor and that the plaintiff acted in self-defense.[33] But the complaint's allegations also establish that the police

---

[30] *Id.* at 4 (¶ 19).

[31] Criminal Docket, Ex. A to RJN – ECF No. 14-1 at 4.

[32] Opp. – ECF No. 15 at 4–5.

[33] *Id.*; Compl. – ECF No. 1 at 4–5 (¶¶ 19–20).

ORDER – No. 3:19-cv-01171-LB 7

officer arrested and charged the plaintiff — the victor in an apparent altercation — when the plaintiff merely believed he was about to be attacked. Probable cause turns on the facts and circumstances within the officer's knowledge. *Lacey*, 693 F.3d at 918; *accord Yousefian v. City of Glendale*, 779 F.3d 1010, 1014 (9th Cir. 2015). Moreover, the weight of authority supports the conclusion that the plaintiff's assertion of self-defense does not mean that there is not probable cause.

In *Yousefian*, for example, the plaintiff called the police to report that his father-in-law attacked him. 779 F.3d at 1012. When the police arrived, they saw the elderly father-in-law lying on the floor with a bleeding head wound. *Id.* The plaintiff, who had no significant injuries, refused medical treatment. *Id.* Other witnesses told the police that the plaintiff attacked the father-in-law without provocation. *Id.* at 1014. On these facts, the court held that "[a] police officer who finds an elderly and infirm man bleeding profusely from a head wound admittedly inflicted by a younger man without significant injuries will have probable cause to believe the latter has committed assault." *Id.* The plaintiff's argument — that he called the police to the scene and asserted self-defense — did not alter the conclusion that there was probable cause. *Id.* While an officer cannot ignore exculpatory evidence that negates probable cause, "[t]he mere existence of some evidence that could suggest self-defense does not negate probable cause." *Id.*; *see Blankenhorn v. City of Orange*, 485 F.3d 463, 475 (9th Cir. 2007) ("Ultimately, . . . our inquiry is not whether [the plaintiff] *was* [committing an offense]. Rather, it is whether a reasonable officer had probable cause to think he could have been.") (emphasis in original) (citing cases).

Similarly, in *Sudderth v. City and Cnty. of San Francisco*, the court rejected the argument that an assertion of self-defense prevented a finding of probable cause. No. 00-2337 MMC, 2001 WL 764929, at *5–6 (N.D. Cal. June 27, 2001). There, the police officers had responded to a 911 call involving an altercation between a landlord and her tenant, saw the tenant (sitting in an ambulance) with a large bruise on her forehead, and ultimately arrested the landlord for battery. *Id.*

at *2, *4–5.[34] The landlord said that she used her phone to defend herself, and the tenant said that the landlord attacked her in her sleep. *Id.* at *2–3. In the subsequent lawsuit by the landlord against the arresting officers, the court granted the officers' summary judgment in part on the ground that "the possible existence of a defense [of self-defense] to the offense does not prevent a finding of probable cause." *Id.* at *5–6 (collecting cases).

In *Castro*, the court also rejected the argument that an assertion of self-defense prevented a finding of probable cause. 2016 WL 1569976 at *9–10. The arresting officer responded to call regarding an injury to an elderly man who — while scavenging for recyclables at a residential complex — had an altercation with the complex's maintenance man. *Id.* at *2. The maintenance man asserted that the elderly man was the assailant. *Id.* Based on the injuries to the elderly man and the maintenance man's height, weight, and age advantages, the officer arrested the maintenance man for battery. *Id.* The maintenance man sued for wrongful arrest, but the court granted summary judgment to the officer, rejecting the plaintiff's argument that if the responding officer "had conducted a more thorough investigation[,] then he would have realized that [the trespasser] . . . was the initial attacker, not plaintiff." *Id.* at *10. The court held that other facts — such as the height and weight disparity between the maintenance man and the trespasser, the trespasser's injuries, and the plaintiff's confirmation of an altercation — established probable cause. *Id.* The plaintiff's argument — that the arresting officer did not conduct a more thorough investigation — did "not negate [the officer's] finding of probable cause." *Id.* "[O]nce probable cause to arrest is established, a law enforcement officer is not 'required by the Constitution to investigate independently every claim of innocence.'" *Id.* at *8 (quoting *Broam v. Bogan*, 320 F.3d 1023, 1032 (9th Cir. 2003)); *accord Verdugo v. Manker*, No. EDCV 06-00989-VBF, 2009 WL 1972909, at *2, *4–6 (C.D. Cal. July 6, 2009) (arresting officer responded to the plaintiff's call regarding a battery against him and cited the plaintiff and the other combatant with misdemeanor battery after interviewing them and a witness; the plaintiff maintained that the other

---

[34] The lawsuit had other claims involving interactions with the police on an earlier date that are not relevant here. *Sudderth*, 2001 WL 764929, at *1-2, *4.

combatant was the aggressor; the court held that the possible existence of a defense did not prevent a finding of probable cause, and the police officer "was not required to determine the relative culpability of the two men, or whether one was acting in self-defense, in order to issue citations for mutual battery to both.") (citing *Sudderth*, 2001 WL 764929, at *5–6), *aff'd*, 412 F. App'x. 937 (9th Cir. 2011).

Where, as here, the facts in a plaintiff's complaint show that that his arrest was supported by probable cause, the plaintiff cannot plead a constitutional false-arrest or false-imprisonment claim, and his claims are subject to dismissal. *Fayer v. Vaughn*, 649 F.3d 1061, 1065 (9th Cir. 2011) (affirming dismissal of claims at the pleading stage where "the facts in the amended complaint show that [the plaintiff]'s arrest was supported by probable cause"); *cf. Arpin v. Santa Clara Transp. Agency*, 261 F.3d 912, 924–26 (9th Cir. 2001) (reversing dismissal of a false-arrest claim where the plaintiff alleged that the battery did not occur, the officers did not see the incident, and the officers did not investigate the incident and instead arrested the plaintiff based on the complainant's "unexamined charge"). Also, for the claim for malicious prosecution, the plaintiff does not cognizably plead that anyone prosecuted him with malice or did so for the purpose of denying him equal protection or another specific constitutional right.

The officer in any event has qualified immunity based on these fact allegations.

"'[T]he doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Mattos v. Agarano*, 661 F.3d 433, 440 (9th Cir. 2011) (en banc) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (internal quotations omitted). "The purpose of qualified immunity is to strike a balance between the competing 'need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably.'" *Id.* (quoting *Pearson*, 555 U.S. at 231). Qualified immunity "is '*an immunity from suit* rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial.'" *Mueller v. Auker*, 576 F.3d 979, 992 (9th Cir. 2009) (emphasis in original) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)). "Under

qualified immunity, an officer will be protected from suit when he or she 'makes a decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances.'" *Id.* (quoting *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004)).

"[Q]ualified immunity protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1867 (2017) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). "The doctrine of qualified immunity gives officials 'breathing room to make reasonable but mistaken judgments about open legal questions.'" *Id.* at 1866 (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011)). "[I]f a reasonable officer might not have known for certain that the conduct was unlawful[,] then the officer is immune from liability." *Id.* at 1867.

In determining whether an officer is entitled to qualified immunity, courts consider (1) whether the officer violated a constitutional right of the plaintiff and (2) whether that constitutional right was "clearly established in light of the specific content of the case" at the time of the events in question. *Mattos*, 661 F.3d at 440 (citation omitted). Courts may exercise their sound discretion in deciding which of these two prongs should be addressed first. *Id.* (citing *Pearson*, 555 U.S. at 235).

Regarding the second prong, the Supreme Court has cautioned that "'clearly established law' should not be defined 'at a high level of generality'" but instead "must be 'particularized' to the facts of the case." *White v. Pauly*, 137 S. Ct. 548, 552 (2017) (citations omitted). The Supreme Court has held that "[a]lthough [its] caselaw does not require a case directly on point for a right to be clearly established, existing precedent must have placed the statutory or constitutional question beyond debate." *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018) (citing *White*, 137 S. Ct. at 551).

The undisputed facts here are that (1) the plaintiff headbutted Mr. Gibson when, during a verbal altercation, Mr. Gibson raised his hand toward the plaintiff, and the plaintiff feared an imminent attack, and (2) the tavern owners told Officer Accornero that Mr. "Gibson was the aggressor and provoked the plaintiff and . . . had been a trouble maker and acted violent in the recent past inside the tavern with the owner."[35] The facts within the officer's knowledge were

---

[35] Compl.– ECF No. 1 at 4–5 (¶¶ 17–20).

what he saw and what he was told when he arrived. He arrested the winner of the fight, and at least on this record, his decision to arrest the plaintiff does not "place[] the statutory or constitutional question beyond debate." *Muellenix v. Luna*, 136 S. Ct. 305, 308 (2015) (quotation omitted); *see Plumhoff v. Rickard*, 572 U.S. 765, 779 (2014). Qualified immunity is appropriate.

The plaintiff asked for leave to amend to allege more facts to show that the officer lacked probable cause. The court grants leave to amend but cautions that the weight of authority does not require an arresting officer to conduct a full investigation of all claims of self-defense. *See Castro*, 2016 WL 1569976, at *8.

### 2. State Claims – Negligence, False Imprisonment, and the Bane Act

The plaintiff claims violations of state law — negligence, false imprisonment, and a violation of the Bane Act, California Civil Code § 52.1 — all predicated on Officer Accornero's allegedly wrongful arrest and the City of Petaluma's vicarious liability for it.[36] The defendants moved to dismiss all claims on the grounds that (1) the plaintiff's allegations establish probable cause for battery and (2) the plaintiff did not plausibly plead the requisite "threat, intimidation, or coercion" element for the Bane Act claim.[37] The plaintiff did not oppose the motion to dismiss the Bane Act claim. The court grants the motion to dismiss the remaining claims.

For a California state-law claim of false arrest or false imprisonment, a plaintiff must show that the defendants (1) intentionally confined the plaintiff without his consent, (2) without lawful privilege, (3) for an appreciable period of time, however brief. *Tekle v. United States*, 511 F.3d

---

[36] *Id.* at 7–8 (¶¶ 35–44). A public entity that employs an officer has vicarious liability for claims stemming from a wrongful arrest. Cal Gov. Code § 815.2(a); *Talada v. City of Martinez, Cali*, No. C 08–02771 WHA, 2009 WL 382758 at *5-6 (N.D. Cal. Feb. 12, 2009) (denying the City of Martinez Police Department's motion to dismiss state claims of false imprisonment and negligence arising from false arrest performed by its police officers); *Save CCSF Coalition v. Lim.* No. 14–cv–05286–SI, 2015 WL 3409260 at *14,*17 (N.D. Cal. May 27, 2015) (granting and denying in part the City and County of San Francisco's motion to dismiss claims of negligence and false arrest).

[37] Mot. – ECF No. 14 at 20–22. The Bane Act prohibits interference or attempted interference with a person's rights under the U.S. or California Constitutions and laws by "threats, intimidation, or coercion." Cal. Civ. Code § 52.1(a)–(b).

ORDER – No. 3:19-cv-01171-LB        12

839, 854 (9th Cir. 2007) (citing *Easton v. Sutter Coast Hosp.*, 80 Cal. App. 4th 485, 496 (2000)).[38]
Police officers are privileged to make lawful arrests. *Blankenhorn*, 485 F.3d at 486–87. For a claim of negligence, "a plaintiff must show that the defendant had a duty to use due care, that he breached that duty, and that the breach was the proximate or legal cause of the resulting injury." *Hayes v. Cnty. of San Diego,* 57 Cal. 4th 622, 629 (2013) (alterations omitted).

The plaintiff's state-law claims fail for the same reasons that his analogous constitutional claims do, namely, there was probable cause for the arrest.

## CONCLUSION

The court grants the motion to dismiss with leave to amend. The plaintiff must file any amended complaint by June 24, 2019.

**IT IS SO ORDERED.**

Dated: June 3, 2019

_____
LAUREL BEELER
United States Magistrate Judge

---

[38] Under California law, "[f]alse arrest is not a different tort; it is merely 'one way of committing a false imprisonment.'" *Martinez v. City of Los Angeles*, 141 F.3d 1373, 1379 (9th Cir. 1998) (quoting *Collins v. City and Cty. of San Francisco*, 50 Cal. App. 3d 671, 673 (1975)).