1

2

3

4

5

6

7

8  UNITED STATES DISTRICT COURT

9  NORTHERN DISTRICT OF CALIFORNIA

10  San Francisco Division

11  STEVEN ANDREW PALLAS,                    Case No. 19-cv-01171-LB

12          Plaintiff,

13      v.                                   **ORDER GRANTING DEFENDANTS'
                                             MOTION TO DISMISS THE
14  PAUL ACCORNERO, et al.,                  AMENDED COMPLAINT**

15          Defendants.                      Re: ECF No. 21

16

17                          **INTRODUCTION**

18      Petaluma police officers arrested Plaintiff Steven Pallas for felony assault and misdemeanor

19  battery after he headbutted Christopher Gibson, allegedly to prevent Mr. Gibson from attacking

20  him.[1] Ultimately, the District Attorney dismissed the case for "insufficient evidence."[2] The

21  plaintiff then sued the arresting officer (Paul Accornero) and the City of Petaluma, alleging

22  malicious prosecution and wrongful arrest (because he acted in self-defense) in violation of § 1983

23

24  _____

25  [1] Am. Compl. – ECF No. 19 at 6 (¶ 27); Criminal Docket, Ex. A to Request for Judicial Notice
    ("RJN") – ECF No. 21-1 at 7. Citations refer to material in the Electronic Case File ("ECF"); pinpoint
26  citations are to the ECF-generated page numbers at the top of documents. The court takes judicial
    notice of the public-record criminal docket. *Lee v. City of Los Angeles,* 250 F.3d 668, 689 (9th Cir.
27  2001).

    [2] Criminal Docket, Ex. A to RJN – ECF No. 21-1 at 10 (dismissing the case on the "People's motion").
28

and state law.[3] The court granted the defendants' previous Rule 12(b)(6) motion to dismiss the claims on the ground that the complaint's facts established probable cause.[4] The plaintiff filed an amended complaint adding a new arresting-officer defendant (Officer Rick Cox) and a First Amendment claim that the police arrested him in retaliation for complaining about Mr. Gibson's drug activity.[5] The defendants move to dismiss all claims under Federal Rule of Civil Procedure 12(b)(6).[6] The court grants the motion.

## STATEMENT

### 1.  Fact Allegations and Claims in the Amended Complaint

According to the amended complaint, Mr. Gibson threatened the plaintiff's wife and the plaintiff's neighbor after the plaintiff reported drug-dealing activity at Mike's Barbershop, which is next door to a lighting store that the plaintiff's wife owns. Mr. Gibson is associated with the barbershop.[7] More specifically, the plaintiff became aware of sales of methamphetamine and heroin at the barbershop in May 2006.[8] He "made several reports to the Petaluma Police regarding the drug dealing. . . ."[9] In March 2012, he sent an email with his concerns to the Mayor, the City Council, and the Acting Chief of Police, and his "concerns were noted but ignored."[10] He continued to report the issue to the police because he was concerned for his wife's safety.[11] He continued to make online comments in the local newspaper's online edition regarding the drug and gang activity in Petaluma and at Mike's Barbershop and "the Petaluma police department's lack of

---

[3] Compl. – ECF No. 1 at 5–9 (¶¶ 24–49).

[4] Mot. – ECF No. 14; Order – ECF No. 18.

[5] Am. Compl. – ECF No. 19 at 2 (¶ 4), 8 (¶¶ 42–46).

[6] Mot. – ECF No. 21.

[7] Am. Compl. – ECF No. 19 at 2 (Introduction).

[8] *Id.* at 3 (¶ 9).

[9] *Id.* (¶ 10).

[10] *Id.* (¶ 11).

[11] *Id.*

attention to the matter."[12] In March 2017, the plaintiff met with the Chief of Police (Ken Savano) to discuss "the drug dealing and gang activity at Mike's barbershop."[13] The Chief said that he would look into it, but the plaintiff "never heard back from him."[14]

In March 2017, Mr. Gibson "entered the plaintiff's wife's [] store, wild-eyed and out of control. The plaintiff had written comments on a newspaper website to which Gibson took exception."[15] Mr. Gibson told the plaintiff's wife that the "the plaintiff's comments in the paper better stop or else . . . and then, using his hand, made a sign like a gun. His posture was very threatening."[16] The plaintiff's wife told the plaintiff about the threats.[17]

On April 20, 2017, Mr. "Gibson again came by [the plaintiff's wife's store] . . . while she was out in front gardening with a friend. He again threatened and bullied her, saying that she needed to stop making comments online."[18] The plaintiff's wife told the plaintiff about the threats.[19]

On June 15, 2017, the plaintiff's wife filed a police report with Officer Giomi of the Petaluma Police Department, reporting that Mr. Gibson had threatened her twice and providing Mr. Gibson's picture (that she downloaded from Facebook).[20] Officer Giomi "failed to act competently on this information. Defendant Rick Cox was the supervising officer when this police report was made. Defendant Accornero also was made aware of this police report. . . ."[21]

On June 21, 2017, at 6:22 p.m., Mr. Gibson "trespassed on the plaintiff's neighbor, Tom Maxstadt's, property, smoked an illegal substance, and threatened to kill Tom and his children."[22]

---

[12] *Id.* (¶ 11).

[13] *Id.* (¶ 12).

[14] *Id.*

[15] *Id.* at 4 (¶ 13).

[16] *Id.* (¶ 14).

[17] *Id.*

[18] *Id.* (¶ 15).

[19] *Id.*

[20] *Id.* (¶ 16).

[21] *Id.*

[22] *Id.* (¶ 17).

That night, when the plaintiff and his wife were walking home from dinner, Mr. Gibson "was standing in front of [the] barbershop (known for illegal drug activity) where he frequently hangs out, and glared at them menacingly."[23] The plaintiff's wife was frightened.[24] "Tom subsequently did research at the local courthouse and determined that Gibson had an extensive record for DUI's and acts of violence. Tom shared that information" with the plaintiff and his wife.[25]

"On June 26, 2017, the plaintiff's wife filed for a restraining order against [Mr.] Gibson, but it was denied."[26]

"Defendants Accornero and Rick Cox were fully aware of the previous threats issued by [Mr.] Gibson to plaintiff and his wife . . . and the fact that she felt threatened enough to seek a restraining order."[27]

On November 2, 2017, Mr. Gibson walked into Ray's Deli and Tavern in Petaluma, with his dog (a "Boxer Breed") on a leash and stood in the doorway, talking with Eli, the proprietor.[28] "The plaintiff subsequently walked into the tavern, ordered a beer, and then sat down."[29] While he was "about to enjoy his beer," Mr. Gibson, while "posturing with his dog[,]" said "[h]ey, you're the fucktard that owns the lighting store down the street."[30] The plaintiff "stood up and asked Gibson if he was the person who had been threatening his wife."[31] "At that very moment, Gibson pulled on the collar of his dog very tight to induce the dog to attack the plaintiff and began to raise his hand toward the plaintiff's direction."[32] The plaintiff, "who believed that he was going to be immediately attacked by Gibson based on the previous death threats that Gibson made to his wife,

---

[23] *Id.* at 5 (¶ 18).

[24] *Id.*

[25] *Id.* at 4 (¶ 17).

[26] *Id.* at 5 (¶ 19).

[27] *Id.* (¶ 20).

[28] *Id.* (¶¶ 21–22).

[29] *Id.* (¶ 22).

[30] *Id.* (¶ 23).

[31] *Id.*

[32] *Id.* at 6 (¶ 24).

head-butted Gibson, attempted to place Gibson in a control hold, and asked for the owner of the tavern to call the Petaluma police."[33]

Officers Accornero and Cox, "who both had full knowledge that Gibson had recently issued death threats to the plaintiff's wife as well as threatened the plaintiff, **(and who were both dismissive when the plaintiff informed them about Gibson['s] coming to his wife's store and threatening her and threatening their neighbor)** subsequently arrived and w[ere] informed by the owner and the employees of the tavern that Gibson was the aggressor and provoked the plaintiff, and that Gibson had been a trouble maker, acting violent in the recent past inside the tavern with the owner."[34] In arresting the plaintiff, Officers Accornero and Cox "relied solely on the claims made by Christopher Gibson that he was a victim of battery at the hands of the plaintiff and failed to investigate the basis of Christopher Gibson's knowledge and did not allow the plaintiff or his neighbor, ([a] prior victim of Gibson)[,] an adequate chance to explain who Gibson was and all of the acts of Gibson that led to the events of the incident."[35] "Despite hearing this from the owner and employees of the tavern along with his previous knowledge of the death threats issued by Gibson to the plaintiff's wife as well as threats to the plaintiff," the officers "arrested the plaintiff and charged him with violating Penal Code Section 244.5(b), a felony [assault] and Penal Code Section 242, a misdemeanor [battery]."[36] "Both of these criminal charges were subsequently dismissed after the plaintiff was forced to vigorously fight against the charges in court for over several months."[37] "[W]ith all the conversations and reports that plaintiff has made throughout the past 13 years to the police genuinely concerned for his and his wife's safety, the Petaluma Police Department failed to thoroughly investigate and considers the plaintiff a nuisance rather than a helpful, concerned citizen."[38] "It is alleged and believed that on November

---

[33] *Id.*

[34] *Id.* (¶ 25) (emphasis in the original).

[35] *Id.* (¶ 26).

[36] *Id.* (¶ 27).

[37] *Id.* (¶ 28).

[38] *Id.* at 7 (¶ 29).

2, 2017, Officers Accornero and . . . Cox retaliated against the plaintiff and used their color of authority to arrest and discredit him."[39]

The complaint has the following claims: (1) a § 1983 claim against Officers Accornero and Cox for malicious prosecution and false arrest (based on lack of probable cause) because "no reasonable person in the defendant officers' same position would have believed that there were grounds for causing the plaintiff to be arrested or prosecuted . . . because the defendant officers had full knowledge that the plaintiff was acting in self-defense;" (2) a § 1983 claim against the officers under the First Amendment because they falsely arrested him for conveying "his concerns about the drug activity taking place by his wife's business and the Petaluma Police Department's failure to stop it;" and (3) state-law negligence and false-arrest claims against the officers and against the City of Petaluma based on its vicarious liability for the officers' conduct under California Government Code § 815.2.[40]

## 2. Procedural History

The plaintiff timely filed a government claim against the defendants pursuant to California Government Code § 910.[41] The City of Petaluma rejected his claim on June 26, 2018.[42]

On March 3, 2019, the plaintiff filed a complaint alleging federal and state claims for wrongful arrest based on a lack of probable cause.[43] The defendants moved to dismiss all claims under Federal Rule of Civil Procedure 12(b)(6) on the grounds that the complaint established probable cause and the defendants were entitled to qualified immunity, and the court granted the motion and dismissed the claims with leave to amend.[44] The plaintiff filed an amended complaint on June 24,

---

[39] *Id.* (¶ 30).

[40] *Id.* at 7–10 (¶¶ 31–56).

[41] *Id.* at 6 (¶ 28).

[42] *Id.*

[43] Compl. – ECF No. 1.

[44] Mot. – ECF No. 14; Order – ECF No. 18.

2019, and the defendants moved to dismiss it under Rule 12(b)(6).[45] All the parties consented to magistrate-judge jurisdiction.[46] The court held a hearing on August 22, 2018.

## STANDARD OF REVIEW

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief" to give the defendant "fair notice" of what the claims are and the grounds upon which they rest. Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A complaint does not need detailed factual allegations, but "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. "Factual allegations must be enough to raise a right to relief above the speculative level . . .." *Id.* (internal citations omitted).

To survive a motion to dismiss, a complaint must contain sufficient factual allegations, which when accepted as true, "'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557) (internal quotations omitted).

If a court dismisses a complaint, it must give leave to amend unless the "pleading could not possibly be cured by the allegation of other facts." *Cook, Perkiss and Liehe, Inc. v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990).

---

[45] Am. Compl. – ECF No. 19; Mot. – ECF No. 21.
[46] Consent Forms – ECF Nos. 7, 13, 25.

**ANALYSIS**

**1.  Section 1983 Claim — Malicious Prosecution and Wrongful Arrest**

The plaintiff claims malicious prosecution and wrongful arrest in violation of § 1983 on the ground that the officers lacked probable cause to arrest him.[47] The defendants move to dismiss on the grounds that the plaintiff's allegations establish probable cause for an arrest for battery, and in any event, the officers are entitled to qualified immunity.[48] The court grants the motion to dismiss.

The court's order dismissing the last complaint for failure to state a claim is attached and incorporated into this order by this reference. It sets forth the governing legal standards and the court's previous ruling that the complaint's fact allegations establish probable cause and that in any event, qualified immunity applies.[49] The plaintiff's new allegations — addressing the officers' knowledge about (1) the plaintiff's complaints about Mr. Gibson's allegedly illegal activities, (2) his threats to the plaintiff, his wife, and the neighbor (and the officers' dismissing the fear that those acts engendered), and (3) Mr. Gibson's role (according to the tavern owner and employees) as the aggressor — do not change the outcome. As the court held previously, by his own admission, the plaintiff headbutted Mr. Gibson, which establishes probable cause for felony assault and misdemeanor battery.[50] The contention that the officers did not fully investigate the claim of self-defense does not alter the conclusion because the officers — in the context of facts showing an actual headbutt to Mr. Gibson — were not constitutionally obliged to conduct a full investigation of all claims of self-defense.[51] The fact that there might be evidence that he was

---

[47] Am. Compl. – ECF No. 19 at 7–8 (¶¶ 31–41).

[48] Mot. – ECF No. 21 at 16–20, 22−23; Reply ECF No. 23 at 7−11.

[49] Order – ECF No. 18 at 5–12.

[50] *Id.* at 7–10.

[51] *Id.* at 7–10, 12 (analyzing cases and concluding that the weight of authority supports the conclusion that a plaintiff's assertion of self-defense does not necessarily negate probable cause); *see also Perez v. Santa Cruz*, City of, No. 15-cv-02527-BLF, 2017 WL 6026246, at *14–15 (N.D. Cal. Dec. 5, 2017) (same). The defendants also contend that the district attorney prosecuted the case, and the trial court held a preliminary hearing, heard testimony from Mr. Gibson and Officer Accornero, considered the plaintiff's attorney's cross-examination of both witnesses, and held the plaintiff to answer for the criminal charges under Penal Code sections 242 and 245(b), thereby immunizing the arresting officers. Mot. – ECF No. 21 at 14, 19−20 (citing *Smiddy v. Varney*, 665 F.2d 261, 266 (9th Cir. 1981), *overruled on other grounds*, *Beck v. City of Upland*, 527 F.3d 853, 865 (9th Cir. 2008), and asserting

acting in self-defense is an argument that he could raise in his criminal case, but "[t]he mere

existence of some evidence that could suggest self-defense does not negate probable cause" in the

first instance. *Yosefian v. City of Glendale,* 779 F.3d 1010, 1014 (9ᵗʰ Cir. 2015). Moreover, for the

reasons set forth in the earlier order, qualified immunity is appropriate.[52] Given the plaintiff's

allegations about what the officers knew before they arrived and what they saw (and were told)

when they arrived), the decision to arrest the plaintiff does not "place[] the statutory or

constitutional question beyond debate." *Muellenix v. Luna*, 136 S. Ct. 305, 308 (2015) (quotation

omitted); *see Plumhoff v. Rickard*, 572 U.S. 765, 779 (2014).

### 2. First Amendment Claim

The plaintiff claims that the officers falsely arrested him in retaliation for conveying his

concerns about Mr. Gibson's drug activity and the police department's failure to address the

concerns, in violation of the First Amendment and § 1983.[53] The defendants move to dismiss the

claim on the grounds that (1) the plaintiff's allegations are conclusory, (2) he must show a lack of

probable cause for his arrest as a threshold issue for his retaliation claim, and (3) in any event, the

officers are entitled to qualified immunity.[54] The court dismisses the claim because the allegations

of retaliatory conduct are conclusory, and in any event, the plaintiff does not show a lack of

probable cause, which is a prerequisite for proceeding on the First Amendment claim.

To plead a First Amendment claim for retaliation, a plaintiff must allege (1) constitutionally

protected conduct, (2) retaliatory action sufficient to deter a person of ordinary firmness from

exercising his constitutional rights, and (3) a causal link between the protected conduct and the

---

that the "[f]iling of a criminal complaint immunizes investigating officers . . . from damages suffered thereafter because it is presumed that the officer filing the complaint exercised independent judgment in determining that probable cause for arrest exists at that time"); *see* 4/6/2018 Minute Entries, Criminal Docket, Ex. A to RJN – ECF No. 21-1 at 7. The court does not reach this argument at the pleadings stage. *See Williams v. Cty. of Alameda*, 26 F. Supp. 3d 925, 945 (N.D. Cal. 2014); *see also Neylon v. Cty. of Inyo*, No. 1:16-CV-0712 AWI JLT, 2017 WL 999226, at *4 (E.D. Cal. March 14, 2017) (collecting cases).

[52] *Id.* at 10–12.

[53] Am. Compl. – ECF No. 19 at 8–9 (¶¶ 42–46).

[54] Mot. – ECF No. 21 at 20–23; Reply – ECF No. 23 at 10–11.

ORDER – No. 19-cv-01171-LB                    9

retaliatory action. *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977); *Ford v. Yakima*, 706 F.3d 1188, 1193 (9th Cir. 2013). "To prevail on such a clam, a plaintiff must establish a 'causal connection' between the government defendant's 'retaliatory animus' and the plaintiff's 'subsequent injury.'" *Nieves v. Bartlett*, 139 S. Ct. 1715, 1722 (2019) (quoting *Hartman v. Moore,* 547 U.S. 250, 259 (2006)). "It is not enough to show that an official acted with a retaliatory motive and that the plaintiff was injured — the motive must cause the injury. Specifically, it must be a 'but-for' cause, meaning that the adverse action against the plaintiff would not have been taken absent the retaliatory motive." *Id.*

In retaliatory-prosecution cases, "a plaintiff must plead and prove the absence of probable cause for the underlying criminal charge." *Id.* at 1723 (citing *Hartman*, 547 U.S. at 263, 265–66). "*Hartman* requires plaintiffs in retaliatory prosecution cases to show more than the subjective animus of an officer and a subsequent injury; plaintiffs must also prove as a threshold matter that the decision to press charges was objectively unreasonable because it was not supported by probable cause." *Id.*

Retaliatory-arrest cases generally also require plaintiffs to plead and prove the absence of probable cause. *Id.* at 1723, 1726–27. "Although probable cause generally should defeat a retaliatory arrest claim, a narrow qualification is warranted for circumstances where officers have probable cause to make arrests, but typically exercise their discretion not to do so." *Id.* at 1727 (using jaywalking as an example). A contrary rule would risk that officers might exploit the arrest power as a means of suppressing speech. *Id.* (quotation and citation omitted).

Here, the plaintiff does not plead facts establishing a retaliatory animus and instead pleads only his conclusion that officers retaliated against him for complaining for years about Mr. Gibson's allegedly illegal activities and the police department's failure to address them. He does not plausibly plead a claim. Moreover, probable cause existed for his arrest and prosecution, which precludes his claims. *Nieves*, 139 S.Ct. at 1724.

The plaintiff nonetheless argues that the narrow exception in *Nieves* — permitting claims of retaliation to go forward in cases where officers have probable cause for an arrest but typically

exercise their discretion and do not arrest — applies here.[55] This argument does not persuade. The assaults here resulted in a felony charge of assault and a serious misdemeanor charge of battery and thus differ in kind from the infractions (such as jaywalking) cited in *Nieves*. *Id.* at 1726 (the Court defines the contours of a § 1983 claim by looking to common-law principles that were well settled when § 1983 was enacted; at the time, officers were privileged to make common-law arrests based on probable cause for felonies and certain misdemeanors and otherwise were privileged to make warrantless arrests for misdemeanors only in limited circumstances).

### 3. State Claims: False Imprisonment and Negligence

The plaintiff claims that the officers wrongfully arrested him and maliciously prosecuted him, all because they did not investigate his claim of self-defense, and the City of Petaluma is vicariously liable for the state-law claims.[56] The defendants moved to dismiss the claims on the grounds that the plaintiff's allegations establish probable cause for his arrest on the charges of felony assault and misdemeanor battery and state-law immunities bar the claims.[57]

For a California state-law claim of false arrest or false imprisonment, a plaintiff must show that the defendants (1) intentionally confined the plaintiff without his consent, (2) without lawful privilege, (3) for an appreciable period of time, however brief. *Tekle v. United States*, 511 F.3d 839, 854 (9th Cir. 2007) (citing *Easton v. Sutter Coast Hosp.*, 80 Cal. App. 4th 485, 496 (2000)).[58]

For a claim of negligence, "a plaintiff must show that the defendant had a duty to use due care, that he breached that duty, and that the breach was the proximate or legal cause of the resulting injury." *Hayes v. Cnty. of San Diego,* 57 Cal. 4th 622, 629 (2013) (alterations omitted). Decisions to arrest or to take some protective action less drastic than arrest, or to investigate or not

---

[55] Opp. – ECF No. 22 at 5–7.

[56] Am. Compl. – ECF No. 21 at 9–10 (¶¶ 47–56).

[57] Mot. – ECF No. 21 at 16–20; Reply – ECF No. 23 at 7–9.

[58] Under California law, "[f]alse arrest is not a different tort; it is merely 'one way of committing a false imprisonment.'" *Martinez v. City of Los Angeles*, 141 F.3d 1373, 1379 (9th Cir. 1998) (quoting *Collins v. City and Cnty. of San Francisco*, 50 Cal. App. 3d 671, 673 (1975)).

investigate, are discretionary acts that fall within California Government Code § 820.2's statutory immunity.[59] *Martinez v. City of Los Angeles*, 141 F.3d 1373, 1379 (9th Cir. 1998); *Castro v. City of Union City*, No. 14-cv-00272-MEJ, 2014 WL 4063006, at *12 (N.D. Cal. Aug. 14, 2014) (granting motion to dismiss and holding that § 820.2 immunizes officers for discretionary decisions about who to investigate and arrest; the plaintiff alleged that another man attacked him; officers arrived after the fight and arrested the plaintiff instead of his alleged attacker; the court held that these were discretionary acts entitled to statutory immunity) (citing *McCarthy v. Frost*, 33 Cal. App. 872, 875 (1972)). But while a police officer's initial decision to investigate (for example, a car accident) "may constitute a discretionary decision immunized by section 820.2, the officer is not immunized from any negligence in conducting the investigation." *Sullivan v. City of San Rafael*, No. C 12-1922 MEJ, 2013 WL 3357933, at *14 (N.D. Cal. July 12, 2013) (*citing McCorkle v. City of Los Angeles*, 70 Cal. 2d 252, 261–62 (1969)).

Here, the plaintiff contends that the officers failed to investigate his claim of self-defense and thus wrongfully arrested him, which resulted in his subsequent (allegedly) wrongful prosecution. This is not a situation where the plaintiff was merely defending himself against attack. He struck the first blow and then restrained Mr. Gibson. In any event, state-law immunity protects the officers from their discretionary decision not to investigate his claim of self-defense before arresting him. *Martinez*, 141 F.3d at 1379; *Castro*, 2014 WL 4063006, at *12; *see Rattray v. City of Nat'l City*, 51 F.3d 793, 798 (9th Cir. 1994).

In both complaints, the plaintiff predicates his claims only on fact allegations about the discretionary decision not to investigate his claim of self-defense before arresting him and not on fact allegations about any post-arrest negligent investigation. *Cf. Sullivan*, 2013 WL 3357933, at *14. Given that the court has afforded the plaintiff an opportunity to allege additional facts to cure the defects, and he has not, the court dismisses the claims without leave to amend.

---

[59] Cal. Gov't Code § 820.2 provides that "[e]xcept as otherwise provided by statute, a public employee is not liable for an injury resulting from his act or omission where the act or omission was the result of the exercise of the discretion vested in him, whether or not such discretion be abused."

**CONCLUSION**

The court grants the defendants' motion to dismiss the amended complaint. The court previously gave leave to amend to add allegations to support the claim of a lack of probable cause.[60] The plaintiff did not cure the deficiencies, and so the court dismisses the federal lack-of-probable-cause claims with prejudice. The First Amendment claim requires the plaintiff to establish as a threshold matter that the decisions to arrest and prosecute him were not supported by probable cause. *Nieves*, 139 S. Ct. at 1723, 1726–27. Because probable cause exists, and this is not a case where officers typically exercise their discretion not to arrest, the plaintiff cannot cure the deficiencies, and the dismissal is with prejudice. Because the state claims are similarly predicated on the non-actionable allegations of failure to investigate the claim of self-defense, the dismissal is with prejudice.

This disposes of ECF No. 21.

**IT IS SO ORDERED.**

Dated: August 22, 2019

_____
LAUREL BEELER
United States Magistrate Judge

---

[60] Order – ECF No. 18 at 13.